UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 06-047 (ESH) |
| ) | |
| ANTHONY BROWN, ) | |
| ) | |

MOTION TO SUPPRESS EVIDENCE,
INCORPORATED MEMORANDUM IN SUPPORT THEREOF, AND
REQUEST FOR EVIDENTIARY HEARING

Anthony Brown, by his attorney, Rita Bosworth, Assistant Federal Public Defender, respectfully moves this court to suppress physical evidence, statements, and any other tainted evidentiary "fruits" resulting from the investigation, searches, and arrest in this case. This motion is made pursuant to FED. R. CRIM. P. 12(b)(3), and is supported by the discussion below. An evidentiary hearing on this motion is respectfully requested.

### STATEMENT OF FACTS[1]

Mr. Brown was charged, in a one-count indictment filed February 21, 2006, with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

According to the law enforcement reports filed in this case, on January 26, 2006, at approximately 8:10 a.m., at least three MPD officers and two CSOSA officers from the United States Parole Commission went to 1111 Queen Street, NE, Apt. 1, to conduct a search. The officers apparently had "an order to search issued by the Parole Commission." During the search

---

[1]This statement of the facts is a summary based on the PD 163 report provided as discovery in this case. By including in this motion the facts as alleged by government witnesses, Mr. Brown does not in any way concede that these facts are accurate or true.

of a closet, the officers allegedly found pieces to a silver .380 auto handgun, a Colt .45 caliber pistol, magazines, and ammunition. The officers apparently found ammunition inside a vehicle as well.

**ARGUMENT**

**I. THE PHYSICAL EVIDENCE RECOVERED ON JANUARY 26, 2006, MUST BE SUPPRESSED AS THE TAINTED FRUIT OF AN ILLEGAL SEARCH AND SEIZURE.**

**A. The Officers Had Neither a Warrant nor Probable Cause to Search**

The Fourth Amendment of the United States Constitution requires that all searches and seizures be "reasonable." Vernonia School District 47J v. Acton, 515 U.S. 646 (1995). This requirement extends to individuals on probation or parole. See Griffin v. Wisconsin, 483 U.S. 868, 873 (1987) ("A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'"). In order for warrantless searches and seizures to be "reasonable," they must be supported by a limited exception to the warrant requirement, such as probable cause. New Jersey v. T.L.O., 469 U.S. 325, 341-42 (1985). In the instant case, no probable cause existed. On January 26, 2006, at least five law enforcement officials went to a house in Northeast Washington, D.C., and conducted a search. Prior to entering the residence, the officers had no reason to believe any illegal activity was occurring or that any contraband was located inside. Because there was no probable cause, the search of the closet and the car and the seizure of the guns, magazines, and ammunition was illegal. Exclusion of the evidence recovered as a result of this Fourth Amendment violation–in this case, the guns, magazines, and ammunition– is the appropriate remedy. Wong Sun v. United States, 371 U.S. 471 (1963).

### B. No Exception to the Warrant Requirement Applies in This Case

While it is true that there are circumstances under which a search is valid even absent a warrant or probable cause, no such circumstances existed here.  See Griffin, 483 U.S. at 873 (noting that government employers may search employees' offices and desks and school officials may search student property without warrants or probable cause).  The government will likely argue that because Mr. Brown was on parole when the search was conducted, his situation falls into a category of "special needs" that justifies a "departure[] from the usual warrant and probable-cause requirements."  Id. at 874.  However, this argument fails for two reasons.  First, the search order upon which the officers relied was invalid because it failed to comply with the rules and regulations set forth by the United States Parole Commission.  Second, the search did not meet the standard of reasonableness that is imposed upon warrantless searches of parolees.

*1. The Search Order Upon Which the Officers Relied was Invalid*

According to the regulations set forth by the Department of Justice in 28 C.F.R. §§ 2.85 and 2.204, there are certain conditions that apply to every person released on parole regardless of whether that person agrees to be bound by them.  § 2.204(a)(2).  These conditions require, for example, that the parolee report to a supervision officer and provide information to and cooperate with that officer.  § 2.204(a)(3)-(6).  The conditions also require parolees to "permit the supervision officer to visit the releasee's residence and workplace," § 2.204(a)(4)(iii), and to "permit the supervision officer to confiscate any material that the supervision officer believes may constitute contraband and that is in plain view in the releasee's possession." § 2.204(a)(4)(iv).  Nowhere do the regulations state that parolees must submit to searches.

Department of Justice regulations also specify that "[t]he [Parole] Commission may impose a condition other than one of the general conditions of release if the Commission determines that such condition is necessary to protect the public from further crimes by the releasee and provide adequate supervision of the releasee." § 2.85(b). In order to modify the conditions of release, section 2.204(c)(2)(i) of the regulations requires that

> [B]efore the Commission orders a change of condition, the releasee shall be notified of the proposed modification or addition and, unless waived, shall have 10 days from the receipt of such notification to comment on the proposed modification or addition. Following that 10-day period, the Commission shall have 21 days, exclusive of holidays, to determine whether to order such modification or addition to the conditions of release.

When Mr. Brown was paroled on August 8, 2004, he signed a certificate of parole which contained twenty general conditions and zero special conditions. Ex. 1, pp. 1-4. Of the twenty general conditions, none of them specified that Mr. Brown was subject to searches of any kind. On January 13, 2006, a "Notice of Action" was issued by the United States Parole Commission which added certain special conditions to Mr. Brown's parole. Ex. 1, pp. 5-6. One of those conditions stated that "you shall submit to a search of **your** person, property, vehicle, and abode, conducted at a reasonable time and in a reasonable manner by the Supervision Officer." However, Mr. Brown was deprived of due process because he never received any notice of any of the proposed special conditions, as the Department of Justice regulations require. Furthermore, the search took place just nine business days after the Notice of Action issued, which, even if Mr. Brown had received notice, did not satisfy the requirement that he have ten days to comment on the proposed modifications. Because the search order was invalid, the search was illegal, and the proper remedy is exclusion of the illegally-obtained evidence.

4

*2. The Search Was Illegal Because it Did Not Satisfy the Reasonableness Standard that Applies to "Special Needs" Searches*

Though supervision of people who have been convicted of crimes qualifies as a "special need" of the state, permitting "a degree of impingement upon privacy that would not be constitutional if applied to the public at large," courts have made clear that such "permissible degree is not unlimited." Griffin, 483 U.S. at 875. The Supreme Court has held that a probation officer may search a probationer's home without a warrant or probable cause only if "the information possessed by the officer satisfies a federal 'reasonable grounds' standard." Id. at 872. To determine if a search was reasonable, the court must examine the totality of the circumstances, balancing both the privacy interests of the individual and the government's interests. United States v. Knights, 534 U.S. 112, 118-119 (2001).

An examination of the totality of the circumstances in Mr. Brown's case makes clear that the searches of the house and car were unreasonable. In Knights, the Court held that a warrantless search of a probationer's apartment was reasonable under the Fourth Amendment because it was supported by reasonable suspicion and authorized by a condition of his probation. As the Court stated, "the probation search condition [was] a salient circumstance." Id. at 118. In Mr. Brown's case, the special condition authorizing a search was not valid. Absent that, there was no other reason for the officers to search the home or vehicle. As such, Mr. Brown's privacy interests unequivocally outweighed any interest the government had in conducting the search, and the search was therefore illegal. The evidence must be excluded.

**II. ALL STATEMENTS MADE BY MR. BROWN ON JANUARY 26, 2006, MUST BE SUPPRESSED BECAUSE THEY WERE INVOLUNTARY AND MADE IN VIOLATION OF MIRANDA.**

The government has alleged that Mr. Brown made three statements prior to his arrest and prior to being read his Miranda rights. Before introducing those statements at trial, either in its case-in-chief or as impeachment or rebuttal evidence, the government bears the burden of proving that the statements were voluntary. See Lego v. Twomey, 404 U.S. 477 (1972). The test for voluntariness is whether a statement is the "product of an essentially free and unconstrained choice by its maker." Culombe v. Connecticut, 367 U.S. 568, 602 (1961). The determination of whether a statement was made voluntarily "requires a careful evaluation of all the circumstances of the interrogation." Mincey v. Arizona, 437 U.S. 385, 402 (1978). The Court must consider the "totality of the circumstances" in deciding whether the defendant made his statement voluntarily. Fikes v. Alabama, 352 U.S. 191 (1957); see also Gallegos v. Colorado, 370 U.S. 49 (1962) (determination of whether an accused's statement was made involuntarily so as to render it inadmissible requires close scrutiny of the facts of each individual case); Clewis v. Texas, 386 U.S. 707 (1967).

Specifically, the Court must examine the efforts to overbear the defendant's free will in relation to his capacity to resist those efforts. Davis v. North Carolina, 384 U.S. 737 (1966); Culombe, 367 U.S. at 607. The Court must examine the defendant's "background, experience, and conduct," North Carolina v. Butler, 441 U.S. 369, 375 (1979), to determine whether his statements were the product of a rational intellect and a free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1980). Here, the evidence at a hearing will show that any statements made by Mr. Brown were made involuntarily and thus must be suppressed under the Fifth Amendment.

6

Even if the statements were made voluntarily, <u>Miranda</u> requires suppression of Mr. Brown's statements during the government's case-in-chief because he was not adequately apprised of his right against self-incrimination prior to undergoing custodial interrogation. <u>See, e.g.</u>, <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 110 S. Ct. 2638, 2643-44 (1990). A person is in "custody" under <u>Miranda</u> when he "has been . . . deprived of his freedom of action in any significant way." <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). Whether a person is in custody depends upon "how a reasonable man in the suspect's position would have understood his situation." <u>Berkemer v. McCarty</u>, 468 U.S. 420, 442 (1984). "[T]he term 'interrogation' under <u>Miranda</u> refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980).

The government bears the heavy burden of establishing that proper <u>Miranda</u> warnings were given to the defendant and that an intelligent and voluntary waiver of those rights occurred prior to questioning of the defendant. <u>Miranda</u>, 384 U.S. at 475. As the Court recognized in <u>Moran v. Burbine</u>, 475 U.S. 412 (1986),

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

<u>Id</u>. at 421.

In the case at hand, there were at least three MPD officers and two CSOSA officers inside

a house with Mr. Brown on January 26, 2006. A hearing on this issue will show that this situation constituted custodial interrogation because Mr. Brown's freedom of movement was constrained by the presence of the five officers. Accordingly, any statements he made were the product of custodial interrogation, and they must be suppressed.

## CONCLUSION

For the foregoing reasons, and any other reasons that the Court may deem just and reasonable, Mr. Brown requests that the Court suppress the guns, magazines, ammunition, and all statements made by Mr. Brown on January 26, 2006, along with any other evidence or statements obtained by the officers in violation of the Fourth and Fifth Amendments. Mr. Brown respectfully requests an evidentiary hearing on this motion.

Respectfully submitted,

A. J. KRAMER
Federal Public Defender

_____
RITA BOSWORTH
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, DC  20004
(202) 208-7500