## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 06–047 (ESH)** |
| | : | |
| | : | **Motions Hearing: June 28, 2006** |
| **ANTHONY BROWN,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

### UNITED STATES' OPPOSITION
### TO MOTION TO SUPPRESS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby responds to Motion to Suppress Evidence, Incorporated Memorandum in Support Thereof, and Request for Evidentiary Hearing (Motion to Suppress). In support of this opposition, the United States would show the following:

1. The defendant was indicted on the charge of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). This charge arises out of what was recovered during a search executed at the defendant's residence on January 23, 2006. The Motion to Suppress challenges the search conducted by the government.

2. On August 8, 2004, the defendant was release to parole supervision following a period of incarceration after being convicted of three counts of rape while armed and three counts of sodomy in the Superior Court for the District of Columbia. The defendant was being supervised by Community Supervision Officer (CSO) Eric Olson of the Court Services and Offender Supervision Agency for the District of Columbia (CSOSA). A copy of the defendant's Certificate of Parole,

along with the corresponding general conditions of his release, issued by the United States Parole Commission (Parole Commission) is attached to the Motion to Suppress.

3. In November of 2005, CSO Olson sent a request to the Parole Commission requesting that the defendant's conditions be amended to include a requirement that the defendant be required to participate in the sex offender aftercare program. The defendant was given notice of this proposed change and objected. Although the Parole Commission felt that there was an immediate need for the defendant's conditions to be changed, the commission also felt that additional changed were warranted as well.

3. Accordingly, on January 4, 2006, CSO Olson prepared a Modification of Release Conditions and submitted it to the Parole Commission. A copy of this request is attached hereto as Exhibit 1. In this document, CSO Olson requested that the Parole Commission modify the defendant's conditions of release to include a requirement that the defendant make a full and complete disclosure of the defendant's financial and business records. The request also included a provision requiring that the "submit to a search of [his] person, property, vehicle, and abode, conducted at a reasonable time and in a reasonable manner by the Supervision." That the defendant was given notice of this proposed change in his conditions of release is demonstrated by the fact that his initials appear on the request as well. The defendant's initials memorialize the fact that the defendant objected to the change in his conditions of release.

4. CSO Olson sent a letter to the Parole Commission on January 5, 2006, setting forth his reasons for the proposed change in the defendant's conditions. A copy of CSO Olson's Letter is attached hereto as Exhibit 2. After detailing the reasons for his request, CSO Olson summed up his request by stating

> [t]he above extracts highlight the offender's propensity for defiant and
> oppositional behavior.  The Instant Offense demonstrates the offender
> is also willing to use violence to achieve an ends, and to associate with
> others capable of violence.  More recent examples are contained above
> of the offender associating with persons involved in criminal behavior
> – namely his fiancee Ms. Petty.  Moreover, the above examples of
> intentional deceit, falsified documents, and questionable financial
> management suggest the offender may be involved in additional and
> ongoing criminal activities. . . . .

The defendant did not submit any written opposition to the Parole Commission.  On January 9, 2006,
CSO submitted additional requests for changes in the defendant's conditions of release.  A copy of
those requests are attached hereto as Exhibit 3.

5.  On January 13, 2006, the Parole Commission granted CSO Olson's request and directed
to the defendant to, inter alia, "submit to a search of [his] person, property, vehicle, and abode,
conducted at a reasonable time and in a reasonable manner by the Supervision Officer."  A copy of
the Parole Commission's Notice of Action is attached to the Motion to Suppress.  A copy of the
Notice of Action was served on the defendant on January 24, 2006.

6.  On January 24, 2006, CSO Olson went to the apartment where the defendant was residing
and conducted the search that led to the recovery of the guns and ammunition in this case.[1]  Upon
the arrival of the police, the defendant, who was living with his niece, indicated that he slept in the
living room.  CSO Olson had been to the apartment on previous occasions and was already aware
that the defendant slept in the living room and kept all of his belongings in the living room closet.
The CSO began to search the closet and the defendant spontaneously stated "If you find anything in
there, it isn't mine."  The closet was filled with bags of clothing for men, and the police began to

---

[1]  Prior to conducting the search, CSO Olson requested permission from the lessee of the
apartment, the defendant's niece, and was granted permission to search all of the apartment
except for the niece's bedroom.

search the bags.  In a blue nylon duffle bag, the officers found a disassembled .38 caliber Davis Industries semi-automatic handgun and two magazines loaded with ammunition.  When the police found the gun, the defendant stated "That gun doesn't even work, it's broken."  The officer continued to search the closet and recovered a green briefcase that the officer had seen the defendant carrying on previous occasions.  The officer found a .45 caliber Colt semi-automatic pistol in the briefcase.  The officer also found paperwork with the defendant's name.  The Colt was loaded with 8 rounds of ammunition.  In the same closet, the officers recovered a box with 21 rounds of .45 caliber ammunition.  In the trunk of the defendant's vehicle, the police recovered a box with 27 rounds of .45 caliber ammunition.

7.    The Motion to Suppress sets forth two reasons why the evidence in this case should be suppressed.  First, the defendant argues that the Parole Commission, acting through CSO Olson, did not follow the proper guidelines regarding the timing of a change in the defendant's conditions of release.  Motion to Suppress, pp 3-4.  The defendant goes on to argue that the search warrant in this case did not meet the standard for a "special needs" search.  The defendant is simply wrong as to both arguments.

**ARGUMENT**

The Motion to Suppress Should Be Denied
Because The Parole Commission Did Not Violate
<u>The Defendant's Fourth Amendment Rights</u>

8.    The defendant's arguments should be rejected.  First, as to the Parole Commission's alleged failure to follow the applicable guidelines. the Parole Commission had the discretion to not wait for ten days to pass, after giving notice to the releasee, to impose a new condition of his release.  Second, in light of the fact that the defendant was on parolee and had engaged in suspicious

-4-

behavior, there was ample reason for his residence to be searched.

A.    The Parole Commission Was Not Required To
      Follow The Time Periods Set Forth 28 C.F.R. § 2.204

9.    The Motion to Suppress wrongly contends that the defendant did not receive notice of the proposed change in his condition.  As demonstrated in Exhibit 1, the Modification of Release Conditions advised the defendant on January 4, 2006, that CSO Olson was seeking the relevant modification.  Therefore, this argument should be rejected.

10.    The Motion to Suppress mistakenly relies on § 2.204(c)(2)(i) and argues that the defendant was entitled to ten days to comment on the proposed change.  However, the next paragraph in the regulation provides that the time limits do not "apply to a change of condition that results from a revocation hearing for the releasee, a determination that the modification or addition must be ordered immediately to prevent harm to the releasee or to the public, or a request from the releasee."  Thus, the Parole Commission was not required to follow the time guidelines relied on by the defendant.  I

11.    Moreover, the defendant offers no authority for the proposition that a technical violation of these guidelines warrants suppression.  Indeed, the regulations goes on to provide that the releasee has no appellate rights under the regulation.  There is nothing in the timing provisions of these guidelines that would give rise to a constitutional interest and, thus, there is nothing that would warrant suppression.  For example, a technical violation of Rule 41 of the Federal Rules of Criminal Procedure would not warrant suppression.  See, United States v. Gerald, 5 F.3d 563, 566-67 (D.C. Cir. 1993)(evidence not suppressed though officers returned warrant five months after search because prejudice not shown); United States v. Simons, 206 F.3d 392, 403 (4th Cir. 2000)(evidence

not suppressed even though police failed to leave a copy of the warrant or a receipt); In re search of Office of Tylman, 245 F.3d 978, 981 (7th Cir. 2001)(evidence not suppressed even if Rule 41(d) [now Rule 41(f)] violated.). Therefore, even if the government had violated the regulations, which it did not, the Motion to Suppress should be denied.

B.     The Search of the Defendant's House Was
       Reasonable Because There Was A Special Need
       To Ensure that Defendant, a Parolee, was not re-offending

12.    The search conducted by the government did not violated the Fourth Amendment. "The fundamental command of the Fourth Amendment is that searches and seizures be reasonable." New Jersey v. T.L.O., 469 U.S. 325, 340 (1985). In ascertaining the reasonableness, "the specific content and incidents of this right must be shaped by the context in which it is asserted." Wyman v. James, 400 U.S. 309, 318 (1971). Here, the relevant context is that the defendant was on parole and CSO Olson felt that there was a necessity to ascertain if the defendant was engaged in additional criminal behavior. See Exhibit 2, CSO Olson's Letter of January 5, 2006.

13.    In Griffen v. Wisconsin, 483 U.S. 868, 880 (9187), the Supreme Court held that it was not a constitutional violation, under the "special needs" doctrine, that the warrantless search of a probationers home was conducted and supported by reasonable suspicion. The Supreme Court went on in United States v. Knights, 534 U.S. 112, 121 (2001) to uphold a warrantless search of a probationer's home, under the totality of the circumstances, that was conducted pursuant to a special probation condition and supported by reasonable suspicion. Both cases recognized that probationers are more likely than the average citizen to violate the law and the States' need to combat recidivism.

14.    Under the special needs test, a court is to employ a balancing test that weighs the intrusion on the individual's privacy interest against the special needs of the government. Ferguson

v. City of Charleston, 532 U.S. 67, 78 (2001).  Here, the defendant, as a person on parolee, was subject to a special condition that he, his abode and his vehicle were subject to be searched at a reasonable time and in a reasonable manner.  Being a parolee, it is clear that the defendant's privacy interest was minimal.  See Morrisey v. Brewer, 408 U.S. 471, 480 (1972).  Plainly, as a general matter, there is a special need for the government to prevent parolees from re-offending.  Moreover, as CSO Olson's letter demonstrates, there was a reasonable suspicion that the defendant was engaged in illegal behavior.  Therefore, the intrusion on the defendant's limited privacy interest was reasonable and the Motion to Suppress should be denied.

The Motion to Suppress Should Be Denied
Because Statements Were Not Made As
The Result of Police Interrogation

15.  The Motion to Suppress should be denied because the defendant's statements were spontaneous utterances and were not the result of an interrogation by the police.  While the United States would concede, for purposes of this motion, that the defendant was in custody at the time of the statements, he was not being interrogated within the meaning of Miranda v. Arizona, 384 U.S. 436 (1966).

16.  It is well established that a suspect in police custody must given a warning about his or her rights before they are subjected to interrogation, and that any statements made by the suspect in response to an interrogation be the product of a knowing, intelligent, and voluntary waiver of rights.  Miranda v. Arizona, supra, 384 U.S. at 478.  It is also clear that, while a suspect may be in custody, there is no violation of Miranda if the suspect volunteers a statement in absence of an interrogation.  Rhode Island v. Innis, 446 U.S. 291, 300 (1980).  Here, the defendant was watching the officers as they began to search the closet where the defendant kept the guns and ammunition.  The officers did

not ask him any questions, or engage in any conduct, that was designed to elicit an incriminating response.

17.  An interrogation has been defined to mean words or actions that the police should know are reasonably likely to elicit an incriminating response.  Rhode Island v. Innis, 446 U.S. at 301.  In contrast, questions, statement and other police activities that are part of the standard booking process are not viewed as interrogation.  Pennsylvania v. Muniz, 496 U.S. 582 (1990).  Here, the police were simply initiating the process of searching the defendant's place of residence when he blurted out several statements and, as the police began to recover contraband, he continued to blurt out statements that were not in response to any interrogation.  Therefore, the Motion to Suppress should be denied insofar as it pertains to statements spontaneously made by the defendant during the execution of the warrant.

## <u>CONCLUSION</u>

Therefore, upon the foregoing facts and the authorities cited, the Court should deny the Motion to Suppress in its entirety.

Respectfully,
KENNETH L. WAINSTEIN
United States Attorney


By: _____
MICHAEL T. TRUSCOTT
ASSISTANT UNITED STATES ATTORNEY
Member of the New York Bar
Federal Major Crimes Section
United States Attorney's Office
555 Fourth Street, N.W., Room 4237
Washington, D.C. 20530
Phone: (202) 514-7533
Fax: (202) 514-6010

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing United States' Opposition to Motion to Suppress was caused to be served via United States Mail, postage prepaid, upon counsel of record for the defendants, this 2nd day of May, 2006, upon:

Rita Bosworth
Assistant Federal Public Defender
625 Indian Avenue, N.W., Suite 550
Washington, D.C. 20004


_____
MICHAEL T. TRUSCOTT