UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO.  06-047 (ESH) |
| | : | |
| | : | Sentencing: September 19, 2006 |
| ANTHONY R. BROWN, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**UNITED STATES' MOTION FOR
THREE POINT REDUCTION FOR ACCEPTANCE
OF RESPONSIBILITY
AND MEMORANDUM IN AID OF SENTENCING**

COMES NOW, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and hereby respectfully submits its Motion For Three-Point Reduction For Acceptance of Responsibility and Memorandum in Aid of Sentencing.  In support thereof, the United States would respectfully showing the following:

**Motion for Reduction**

A. Factual Summary of Instant Offense

1. On August 8, 2004, the defendant was released to parole supervision following a period of incarceration after being convicted of three counts of rape while armed and three counts of sodomy in the Superior Court for the District of Columbia.  The defendant was being supervised by Community Supervision Officer (CSO) Eric Olson of the Court Services and Offender Supervision Agency for the District of Columbia (CSOSA).

2. On January 4, 2006, CSO Olson prepared a Modification of Release Conditions and submitted it to the Parole Commission.  CSO Olson requested that the Parole Commission modify

-1-

the defendant's conditions of release to include a requirement that the defendant submit to a search of his person, property, vehicle, and abode at a reasonable time and in a reasonable manner.

    3.  On January 13, 2006, the Parole Commission granted CSO Olson's request.

    4.  On January 24, 2006, CSO Olson went to the apartment where the defendant was residing and conducted a search.  Upon arrival of CSO Olson and the police, the defendant, who was living with his niece, indicated that he slept in the living room.  CSO Olson had been to the apartment on previous occasions and was already aware that the defendant slept in the living room and kept all of his belongings in the living room closet.  The CSO began to search the closet and the defendant spontaneously stated "If you find anything in there, it isn't mine."  The closet was filled with bags of clothing for men, and the police began to search the bags.  In a blue nylon duffle bag, the officers found a disassembled .38 caliber Davis Industries semi-automatic handgun and two magazines loaded with ammunition.  When the police found the gun, the defendant stated "That gun doesn't even work, it's broken."  The officer continued to search the closet and recovered a green briefcase that the officer had seen the defendant carrying on previous occasions.  The officer found a .45 caliber Colt semi-automatic pistol in the briefcase.  The officer also found paperwork with the defendant's name.  The Colt was loaded with 8 rounds of ammunition.  In the same closet, the officers recovered a box with 21 rounds of .45 caliber ammunition.  In the trunk of the defendant's vehicle, the police recovered a box with 27 rounds of .45 caliber ammunition.

    5.  There are no gun manufacturers in the District of Columbia, and that the guns had, therefore, traveled in interstate commerce.

B.  Defendant's Acceptance of Responsibility

6.  The defendant expressed an early interest in entering into a plea.  Because of the defendant's early acceptance of responsibility, the United States was able to conserve valuable prosecution resources by avoiding the time and expense of a trial..

7.  The defendant is entitled to a three-point reduction for acceptance of responsibility pursuant to Section 3E1.1 of the United States Sentencing Guidelines.

**Memorandum in Aid of Sentencing**

8.  Based on the information set forth in the Presentence Investigation Report (PSR), the defendant's base offense level is governed by the fact that defendant pled guilty and accepted responsibility for unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year. U.S.S.G. §2K2.1.  The defendant's base offense level is 20.  In the event that the Court grants the United States' motion, the defendant's base offense level would then be 17.  Based on a total offense level of 17 and a criminal history category of III, the guideline range of imprisonment is 30 to 37 months.  U.S.S.G. Chapter 5, Part A.[1]  The government is recommending that the defendant be sentenced to 30 months.

9.  The Court should impose a sentence within the Sentencing Guideline range.  In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  The Court invalidated the statutory provision that made the Guidelines mandatory: Title 18, United States Code, Section 3553(b)(1).  Booker, 124 S.

---

[1] The government's position on defendant's base offense level, as well as its positions on all applicable specific offense characteristics and adjustments is supported by the PSR.

Ct. at 764. The Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. See 18 U.S.C. § 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Booker, 124 S. Ct. at 766.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker 124 S. Ct. at 767 (citing 18 U.S.C.A. §§ 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range presumptively reasonable, but it also accommodates the salutary goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences. The Court should sentence the defendant to a period of incarceration at the low end of the guidelines.

10. The Sentencing Guideline range for the defendant's charge is not only presumptively reasonable, for the reasons outlined above, but it is reasonable and appropriate for this defendant based on the facts of this case. The defendant was in possession of two handguns at the time of his

arrest. This despite the fact that he had recently been released from jail after serving twenty years.

11. Indeed, according to the PSR, the defendant's criminal record goes back over two decades. The defendant comes before this Court for sentence as an individual who is well aware of the consequences of criminal behavior.

12. Indeed, at the time the defendant committed this offense, he had been convicted on three previous occasions. The most serious offense was a 1984 conviction for rape while armed. This incident involved a woman being raped by the defendant and two others at gun point. In addition to his three convictions, the defendant has been arrested on several other occasion. Thus, the defendant has repeatedly demonstrated his willingness to engage in criminal behavior and the instant offense is simply a continuation of that willingness.

13. This sentence is supported by the factors to be considered by courts as articulated in 18 U.S.C. § 3553(a). This provision provides, in pertinent part, that when fashioning a sentence, courts should consider:

(a). The circumstances surrounding the offense and defendant's criminal history: The most striking aspect of the instant offense is the fact that it comes immediately following the defendant's release from prison. Not only was the defendant on parole at the time he possessed the two handguns in this case, but he had just finished serving twenty years for rape while armed. This is clearly a situation where the defendant should have been on his absolute best behavior. Instead, the defendant was found with two handguns.

(b). The seriousness of the offense and the need to promote respect for the law and punishment: The fact that the defendant was on parole warrants a need to promote respect for the law. In addition to the defendant's criminal history, there is a serious need for individuals to be

punished for possessing handguns.

(c). Potential deterrence: Individuals who are either on parole, probation or some other form of supervision need to know that there will be serious consequences if they are found to have violated the law.

(d). Protecting the public: The public plainly needs to be protected from individuals, such as the defendant, who possess handguns.

(e). The needs of the rehabilitative needs of the defendant: The PSR suggests that the defendant is in need of treatment for alcoholism. Although the government does not oppose such treatment being provided to the defendant, it is the government's position that the defendant's addiction did not cause the defendant to commit the instant offense and any treatment should occur while the defendant is in prison.

Respectfully,

KENNETH L. WAINSTEIN
United States Attorney

By: _____
MICHAEL T. TRUSCOTT
ASSISTANT UNITED STATES ATTORNEY
Member of the New York Bar
Federal Major Crimes Section
United States Attorney's Office
555 Fourth Street, N.W., Room 4237
Washington, D.C. 20530
Phone: (202) 514-7533
Fax: (202) 514-6010